KLIEBERT, Judge.
This case was tried as a concursus proceeding after the Equitable Life Assurance Society of the United States deposited into the registry of the court $38,143.67 in policy proceeds due under Certificate No. 2630 as a result of the death of the insured, Ruben Carter.[1] The rival claimants to the proceeds are the decedent’s concubine of twenty-four years, Freída Williams (appellant), and the decedent's sons, Billie Carter, Joseph C. Thomas, Henry Carter, David C. Thomas, Junius Carter and Samuel C. Thomas, a/k/a Samuel Carter (appellees). Equitable invoked concursus proceedings in response to a petition filed by the sons naming Equitable as a defendant and asserting claim to the policy proceeds. The trial court awarded the proceeds to the sons, subject to a reduction of $1,713.50 for funeral expenses advanced by the concubine or remaining due to the funeral home. From the judgment the concubine has ap *1172 pealed, averring the trial court erred in: (1) appointing a handwriting expert, (2) finding a valid beneficiary form, and (3) charging the expenses of the expert and the debts of the decedent against the proceeds of the insurance policy.
The deceased, Ruben Carter, was an employee of Godchaux-Henderson Sugar Refinery in Reserve, Louisiana. During the course of his employment decedent enrolled in a group life insurance plan under Policy Number 70405. The enrollment card, completed July 13, 1979, reflects that the decedent was assigned Certificate No. 2630 and named as beneficiaries “Billie, Joseph, Henry, David, Junius, Samuel — Sons—Divided equally.”
The decedent was ill and unable to work for an extended period of time prior to his death on June 3, 1984. One year and three weeks prior to his death, an unidentified person obtained a change of beneficiary form from the Office of the Supervisor of Employee Benefits at Godchaux-Henderson. A secretary at Godchaux Henderson typed in the date — May 13,1983 —and the beneficiary’s name — Freída Williams — and released the card in order that the insured’s signature could be obtained, for the insured was too ill at that time to appear in person at the office. The supervisor, Roy Yignes, did not remember who picked up the card. However, it was stipulated the insured was too ill to have come to the office. The card was later returned with a signature purported to be that of the insured.
The only issue before the trial court was the validity of the signature on the change of beneficiary form allegedly executed by the insured on May 13,1983. On motion of the appellees the court appointed Mr. Cy Courtney, an attorney at law and examiner of questioned documents, to assist in determining the validity of the signature. The court ordered that Mr. Courtney’s fee be taxed as costs.
Mr. Courtney made a detailed study of the signature of the insured from standards furnished him, in comparison with the disputed signature, and concluded that the latter was a forgery. The standards included two loan application forms, a voter registration card, a chattel mortgage certificate, and a hospital admission form. At trial Mr. Courtney pointed out numerous dissimilarities in the formation of letters in the questioned signature as compared to the standard group. Based on the testimony of Mr. Courtney the trial court “[had] no difficulty in finding as a matter of fact that the signature on (the change of beneficiary form) May 13, 1983 was signed by an unknown person and not the decedent.” The proceeds were awarded to the appel-lees pursuant to the July 13, 1979 designation of beneficiaries.
On appeal appellant does not challenge the correctness of the trial court’s conclusion as regards the validity of the signature, but rather, avers the court abused its discretion in appointing a handwriting expert. She contends the court abandoned the role of a neutral fact finder and assumed that of an advocate, and in the process “the crucial testimony of the expert witness was not subject to discovery and did not allow proper preparation by the defense for trial.”
A trial court, on its own motion or on motion of a party, has discretionary power and authority to appoint experts to assist in the adjudication of any case in which their special skill or knowledge may aid the court, and the reasonable fees and expenses of these experts shall be taxed as costs of court. La.C.C.P. art. 192; State Department of Transportation and Development v. Estate of Clark, 432 So.2d 405 (La.App. 1st Cir.1983). An expert so appointed is an officer of the court from the time of his qualification until the rendition of final judgment in the case. La.C. C.P. art. 373; Patrick v. Patrick, 240 So.2d 31 (La.App. 2nd Cir.1970). The proper role of the court-appointed expert is to provide the court with facts and information necessary for a complete and just determination of the issues. U.S. Oil of La., Ltd. v. Louisiana Power & Light Company, 350 So.2d 907 (La.App. 1st Cir.1977), writ denied 351 So.2d 775 (La.1977).
*1173 The necessity of assistance from a handwriting expert in determining the validity of the signature is self-evident. Appellees’ motion to appoint an expert was filed January 21, 1986 and thereafter granted. Appellant was served with a copy of the motion and filed a memorandum in opposition. By order dated February 7, 1986 the trial court affirmed the appointment of Mr. Courtney as the expert. To preserve the integrity of Mr. Court’s testimony, the court further ordered that there be no liaison with counsel until trial. Mr. Courtney was cross-examined at trial by counsel for the parties.
What appellant hoped to uncover by discovery of the expert’s testimony is not elucidated, nor is it clear how the ability to prepare a defense was affected. Appellant attaches some significance to the fact Mr. Courtney was appointed “prior to [the court’s]” own fact finding. However, the purpose of appointing the expert was to provide the court with facts and information necessary for a complete and just determination of issues. Patrick, supra. Appointment after trial would preclude cross-examination on the expert’s findings and therefore require further proceedings.
The appointment of Mr. Courtney as a handwriting expert was clearly within the court’s discretion under La.C.C.P. arts. 192 and 373. Although the expert’s fee was originally charged against the funds on deposit, upon judgment the fee was cast as costs.
This assignment of error is meritless.
In her second assignment appellant contends the group insurance enrollment card executed on July 13, 1979 is materially defective in that the surnames of the designated beneficiaries are not enumerated, despite instructions on the form to “Insert Full Name of Beneficiary,” and therefore the proceeds should be distributed under the laws of intestate successions.
The obvious purpose of requiring that full names be inserted is to avoid dispute as to the identity of the intended beneficiary. The important consideration in cases where the name of the beneficiary is not clear is the intention of the insured. See Woodson v. Provident Life & Accident Ins. Co., 5 So.2d 387 (La.App. 4th Cir.1942). Employee Benefits Supervisor, Roy Yignes, testified the names of the designated beneficiaries were typed on the form by a secretary at Godchaux-Henderson. Equitable apparently accepted the form as valid. That the decedent signed the form is undisputed. David Thomas identified the decedent as his father and Billie, Joseph, Juni-us, Sam and Henry as his brothers. It was stipulated that, if called separately, all ap-pellees would answer identically. Henry Carter and Joseph Thomas likewise identified the decedent as their father. “Thomas” was the maiden name of the decedent’s first wife, who was the mother of the ap-pellees. Given the singularity of the constellation of the names “Billie, Joseph, Henry, David, Junius, Samuel,” there can be no doubt that the appellees are the intended beneficiaries. It was not necessary that the appellees prove their paternity. Accordingly, we dismiss this assignment as meritless.
In her final assignment appellant contends that as the issue before the court was to determine the beneficiary of the policy proceeds, rather than an administration of the decedent’s succession, funeral expenses should not have been deducted from the policy proceeds. Nevertheless, appellant concludes the payment was correct “even though it is illegal.” Appellees, however, request in brief on appeal that we vacate that portion of the judgment pertaining to funeral expenses.
As appellees have neither appealed nor answered the appeal, we are powerless to amend the judgment in their favor. See La.C.C.P. art. 2133. The brief submitted by an appellee does not satisfy the requirements of the article as it is neither an answer nor an appeal. See Arrow Fence Co. v. DeFrancesch, 466 So.2d 631 (La.App. 5th Cir.1985); Horne v. Liberty Furniture Company, 452 So.2d 204 (La.App. 5th Cir.1984).
*1174 For the foregoing reasons, the judgment of the trial court is affirmed in all respects.
AFFIRMED.

. Equitable originally averred the amount due was $39,642.82, including interest through February 18, 1985, but later amended the amount to reflect interest through June 26, 1984.